The final case on for argument is Daly v. Citigroup. Thank you. Just so I'm sure we've got the spelling right, you and your client are separated by an I? No, it's the same spelling. It is the same spelling. So we have it wrong on the calendar here? D-A-I-L-Y is not her? It's D-A-L-Y. Right. Thank you. Michelle Daly on behalf of the appellant. May it please the court, we are here for three reasons. The lower court made three errors. They failed to accept as properly pled the blacklisting and tortuous interference alleged in the amended complaint which Citigroup conceded was the operative pleading. They failed to accept as true the facts alleging causation between whistleblowing and retaliation, which was also properly pled in the amended complaint. And three, for failing to enforce the Sarbanes-Oxley Act as amended by Dodd-Frank, which specifically overrode the Federal Arbitration Act in submitting this claim to arbitration. Can I ask you, kind of a background fact, but it's puzzling me, and that is, what happened? The notion, the judge said no, this is subject to arbitration, except for one piece of it which was not, and he dismissed that on other grounds. Okay. Whatever happened to the arbitration? Is it going to go forward? Did it go forward? It stayed. It stayed. Even if we were to affirm here, it would still go forward with an arbitration as to part of this? Only on the claims that were separated out. But it wouldn't be the end of the matter. It would go forward on arbitration, for better or worse. It would end only part of the matters, yes. Am I right about the Sarbanes-Oxley? You concede that it needs to be exhausted administratively, but that your argument is a continuing violation. Is that what saves it? It's not. The continuing violation doctrine is one part of it, but that is not the majority of what we are relying on. Blacklisting was properly pled and was actually occurring at the time of filing. The U-5 was published, and it is not just a statement, but it was a tool used by FINRA, used by Citigroup on FINRA's platform, that would require every single potential employer to have to go through Citigroup in order to hire Aaron. Otherwise, they face disciplinary charges or possible expulsion themselves. Why isn't that the effects of the initial U-5 filing rather than a separate incident that might be a continuing violation? Because every single time Aaron spoke with a potential employer, they would have to discuss with Citigroup the defamatory and false statements on her U-5, and they would have to verify them. So Citigroup was using FINRA's platform on FINRA to ensure that every single potential employer would have to go back and confirm the defamatory statements on the U-5. If it was just a statement, this would be a different thing. They weren't issuing new statements. They were just responding to calls about her? Yes, and they would have to confirm every single time there was a potential employment that the statements on there were either true or false, but if they alleged that they were false, they would be subject to disciplinary action themselves. So by operation of law or reg or agreement, they forced themselves to continue doing... To interfere with Aaron's... Potential employment. Correct, and that's pursuant to very specific FINRA rules. Rule 8867 states potential employers must certify that the member has communicated with all applicants' previous employers for the past three years and has taken appropriate steps to verify the items. So failure to verify the items with Citigroup would subject that potential employer to disciplinary charges and possible expulsion. That's not Citigroup issuing new statements after the U-5. It's just that they pick up the phone and somebody else is calling about her and saying is it true in the U-5, and you say yes. And they have to make that statement. So they put themselves in a situation that would require every single time that Aaron had put any resume through or had any discussions about possible employment, those future employers would have to discuss the U-5 with FINRA or they would be subject to disciplinary charges themselves and expulsion. As far as blacklisting as a cause of action for retaliation, this Court has recognized it as a cause of action in several cases. Wanamaker v. Columbian Rope states that blacklisting a former employee could constitute a claim for retaliation. And Silver v. Mahasco Group also charges a post-employer blacklisting fell within the remedial scope of Title VII. Penchenko v. C.B. Dolge, the Court agreed that post-employment actions against an employee, including a mere failure to write a recommendation letter, could constitute retaliatory acts as far as employment. This Court has already recognized that blacklisting could be a cause of action, especially with regard to retaliation and especially as it relates to employment issues. The 29 CFR 1980 outlines the procedures for handling retaliation complaints under Sarbanes-Oxley, and it specifically lists blacklisting as a form of retaliation protected by Sarbanes-Oxley as amended by Dodd-Frank, which renders the statute of limitations issue completely void. Citigroup and the District Court used the wrong date of retaliation to determine the date the statute of limitations began to toll. Throughout their brief, they stated that the termination date fell outside of the statute of limitations, which is correct, and the date that the amended complaint was submitted to the Department of Labor. And the EEOC did fall well outside of the statute of limitations if you used the wrong date of retaliation. The date of retaliation as properly alleged in the complaint was the final act of blacklisting or tortious interference with employment relations. The second way the lower court erred was by failing to find any connection whatsoever between Aaron's whistleblowing and retaliation. So, assuming a series of acts that comport with the regulation that requires the report, you're saying that at the very least there was one of those that fell within the statute of limitations. Yes, and up to the date that the amended complaint was filed, and well after, Aaron was consistently seeking employment in the financial industry. The second issue that the court found that there was no connection whatsoever between the complaints alleged, Aaron more than sufficiently pled that every single time Citigroup had retaliated against her, every time she's informed her superiors of SEC violations and outright fraud, and even though Citigroup didn't even deny any of the facts as alleged in the complaint, the court found that there was no connection between Citigroup's retaliation and Aaron's whistleblowing which inspired it. When she worked at the equity desk of the private bank which handled stock allocations, when she set up a system for fair allocations, she was stripped of her allocation privileges. The court found absolutely no connection between the retaliation and the whistleblowing. The second, when she emailed her superiors that her allocation rights be restored to her and that she continue to have fair allocation procedures, she was forced to publicly apologize to human resources, to her coworkers, and her bosses for requesting equal treatment and equal allocation privileges. The third and most dangerous is that when Aaron was pressured, after she lost her stock allocation privileges, she sort of made herself an expert on real 144 stock which is insider information. So she became the go-to person for any time that anybody wanted to do anything with inside information. Her bosses, knowing that she's always possessed this very valuable information, were constantly pressuring her, either daily or by the hour, to give up this information so that they could trade on it. And the pressure became so great that she went to human resources again, who referred her to their lawyers, who fired her two weeks later. And the court found no connection whatsoever with that retaliation. The lawyers fired her? Human resources did. She spoke to the lawyers and the same human resources that referred her to the lawyers fired her ultimately. The lower court found no connection whatsoever with that retaliation and Aaron's whistleblowing. The third issue is that the court failed to enforce the congressional mandate, which specifically overrode the Federal Arbitration Act. This is 18 U.S.C. 1514A. I know there was another section that's not relevant here. No pre-dispute arbitration agreement shall be valid or enforceable if the agreement requires arbitration of a dispute arising under this section. Aaron very clearly brought a complaint that Citigroup was guilty of retaliation for whistleblowing under Sarbanes-Oxley. All of Citi's arguments that are in favor of arbitration and the case law that support it were the reason why Dodd-Frank amended Sarbanes-Oxley and made it so abundantly clear that this act was intended to override the Federal Arbitration Act. It states in another place, a party to an action brought under this paragraph shall be entitled to a right to jury. And the rights and remedies provided for in this section may not be waived by any agreement, including by a pre-dispute arbitration agreement. Congress recognized that FINRA was not the proper forum to hear this dispute and that banks, and especially Citigroup, should be held accountable in U.S. courts and not courts run by the defendants. Sarbanes-Oxley was enacted in the wake of the financial ballots to stop corruption, and specifically at Citigroup. FINRA's own rules demand that member banks follow FINRA rules in violation of congressional rules. FINRA rule IM12000 states that it may be deemed conduct inconsistent with just and equitable principles of trade and a violation of rule 2010 for a member to require associated persons to waive the arbitration of disputes, which is in direct contravention of Sarbanes-Oxley. Thank you, Ms. Daly. You've reserved three minutes for rebuttal. You could use some of that time now if you want to. No, I'll wait. Thank you. Ms. Lupien. Lisa Lupien on behalf of the appellees. May it please the Court. Appellant Erin Daly's challenge to Judge Sullivan's well-reasoned decision lacks any legal support. Appellant consistently disregards the governing law and legal precedents. She ignores the Federal Arbitration Act, which is not overridden by the Sarbanes-Oxley Act, as amended by Dodd-Frank. She ignores decades of jurisprudence mandating that arbitration agreements must be enforced according to their terms, and she ignores that statute of limitations must be adhered to and that claims must be timely filed or they cannot be pursued. In the face of these uncontroverted legal principles, appellant presents conclusory assertions that are not supported by the record or the law. The first issue I wanted to address is appellant's challenge to the lower court's decision to compel arbitration of all but the Sarbanes-Oxley claim. Despite this appeal, appellant does not actually challenge the underlying reasons why her claims must be arbitrated. The district court's decision to compel must be affirmed because, one, the record is undisputed that appellant agreed on multiple occasions to arbitrate her employment claims. Do you agree that should, irrespective of what happens here, well, assuming we were to affirm on this, that it would then go to arbitration? That's correct. That's still open? It's not, has not really been filed, but we agree that that's the proper forum to have a, to have a merits, a merits. And it still could be done? That's correct. That's correct. The claims of discrimination and retaliation that appellant asserts are unmistakably employment disputes that are within the scope of the broad arbitration clause, and she not, she cannot borrow the statutory language that Congress chose to add to Sarbanes-Oxley to avoid arbitration of all other statutory claims. Those claims have been consistently and uniformly deemed arbitrable. With respect to the point that Ms. Daly made with respect to the causal connection between her whistleblowing activity, the court did not make any findings at all about the merits of her SOX claim, her Sarbanes-Oxley claim. She could still arbitrate her. I didn't say SOX. We'll understand. Okay. That's one of our, it's such a good acronym. It is. Okay. So there is no merits finding by Judge Sullivan about her, about a causal connection or otherwise. There was a finding that she cannot use the Sarbanes-Oxley, the SOX claim as a talisman to prevent all other claims from being arbitrated because they are intertwined. That was the only finding that he made with respect to the SOX claim and arbitration. With respect to the SOX claim itself, a claimant has 180 days to file with OSHA. She has to exhaust her administrative remedies. The 180-day clock begins to run the date the alleged violation occurred on the date that she became aware of the violation. The last thing that Ms. Daly alleged in her complaint, the last bad act that she's alleged appellees to have committed was filing the U-5. That's the last time they made an alleged retaliatory comment statement. And she had an ability to challenge that if she so chose within 180 days, and she failed to do that. What she's arguing now is a damages argument. She's saying that her client is still impacted, still harmed by that U-5. And it just can't be that once that U-5 was filed, that forever and all eternity, every day she could reassert the statute of limitations simply because it was still out there. Ms. Daly also argues that there was . . . What about the requirement that employers contact them to find out about the U-5 and if it's really true? Ms. Daly misstates the regulation of law. They are prospective. Employers do consult the U-5, but they go and they consult the U-5 through a database. The U-5 has been there since December 23, 2014. Citigroup didn't engage in any further conduct. And there's no allegation that prospective employers so-and-so on some date did anything or that Citigroup made any statement. And in any event, had they said the same thing that was on the U-5, which Ms. Daly knew about from December 23, 2014, she can't keep saying, well, I knew about that from December 23, 2014, so the fact that it's still out there, the fact . . . even if, even though there's no allegation to that effect, that it was repeated later, that wouldn't restart the statute of limitations clause. The cases that Ms. Daly relies upon stand for a general proposition that properly pled and timely filed. A plaintiff can assert a claim of blacklisting, that there could be post-termination actions by a former employer that can be actionable. But it doesn't do away with the statute of limitations. It doesn't, as she said, completely void or invalidate . . . I might be misusing the word, but . . . misremembering what words she used, but it doesn't eliminate statute of limitations. They do have to continue to exist. And she also argued in her paper that it's a continuing violation. And again, that is not accurate. This court is reluctant to extend continuing violation doctrine. And as the lower court noted and cited, this particular argument was already rejected by the Second Circuit in Lightfoot v. Union Carbide, when it held, quote, a continuing violation is not established merely because an employee continues to feel the effects of a discriminatory act on the part of the employer. That's exactly what she's alleging here. She's still feeling the harm from the U-5, but that doesn't make it a timely claim. If it were the U-5 plus some other act that supported blacklisting, and each time there was an inquiry on a U-5, something else was also passed on by your client to the prospective employer, does that continue? I still don't think it would be continuing violation, but if there was a separate post-termination misconduct where there was an allegation, which is not in the amended complaint, but had there, understood, but if there was a U-5 and then some prospective employer called up and said, what happened with Ms. Daly, and there was an allegation that Citigroup did and said something, and there was an allegation that what was said or done was retaliatory, and then it was properly filed with OSHA and properly exhausted within a proper time period, then that arguably, in that scenario, could be actionable. It just isn't what happened here. So because the alleged last misconduct occurred in December 2014, the statute of limitations simply doesn't start anew every day thereafter, and an appellant was not permitted to wait almost two years to raise her claim. Do we need to address whether Dodd-Frank is subject to anti-arbitration prohibitions? When Dodd-Frank amended Sarbanes-Oxley, it only addressed Sarbanes-Oxley. It did not address Dodd-Frank itself, and there is no legislative history or statutory language within Dodd-Frank itself that says that Dodd-Frank is not arbitrable. Sarbanes-Oxley is not arbitrable, but not Dodd-Frank, and that's what the lower court concluded, and we're not aware of any case law that suggests otherwise. There's one district court decision from Connecticut that disagrees with that, right? Yes, there is, but the Murray Court in the Southern District of New York held otherwise, and as did Judge Sullivan below, and there's just . . . There's a division of authority. Amongst the lower court, there's one, I would suggest, one outlying decision. It's never outlying, right? Vermont may be, but not Connecticut. But we have a split in the district. There is at least one authority that goes the other way, but as the lower court noted, as the Supreme Court held in Gross, Congress amends one statutory provision but not another. It is presumed to have acted intentionally. We can't get into the heads of why that decision was made, but Dodd-Frank is a different statutory scheme with different goals and different . . . that serves different purposes, and there was a conscious decision to amend Sarbanes-Oxley and not make that same decision with respect to Dodd-Frank, so those claims are properly arbitrable and the Sarbanes-Oxley claim is properly dismissed. Thank you. I would like to just address the response that if there was any new action, it would give rise to a cause of action again. The language of the U-5 is completely false. The concerns that included tardiness and insubordination with regard to working hours are in work from 7 o'clock in the morning often to 2 and 3 o'clock in the morning the following day. Concerns about a separate incident in which the representative forwarded confidential information about a planned offering to a co-worker. The entire language is false, which requires a new causation of libel every single time a prospective employer would have had to call Citigroup or face disciplinary charges by FINRA, and possible expulsion, which is a pretty serious charge for anybody in finance. The appellant was aware that those statements were in the U-5 and that they would be repeatedly accessed as of the time the U-5 was issued. That's a question. I'm not sure I completely understand your question. Erin realized when she got the U-5. She didn't realize it's in port, and she didn't realize that other employers would have to contact Citigroup. And even if she didn't realize it, if there was libel. Pardon me? Do you have, have you alleged? Yeah, please. Fair follow-up. Have you alleged that in fact people were calling Citigroup or Citicorp afterwards and indeed they were being told yes, that is correct? I mean, was there a republication? Have you alleged that this was constantly republished, or are you saying it would have had to be because they were required to do it? Not republished, but respoken at least because they were required to do it. So you've alleged that it was respoken repeatedly, including within the time limit? Yes, and well after. And as far as the exhaustion of the administrative remedies, because we're alleging that the blacklisting and tortious interference with employment relations was going on up to the time the amended complaint was filed and well after, the Department of Labor received their complaint timely, as did the EEOC, and Erin received her right to sue letter from the EEOC. Therefore, she satisfied all the requirements of Sarbanes-Oxley. I would like to just address the fact that I'm only appealing the issue as far as Sarbanes-Oxley having to do 18 U.S.C. 1514A, which is for whistleblowers retaliation, and that specifically requires that these issues be arbitrated. The matter that's up for dispute is 78U-6C. It's a different statute, and I just wanted to clarify that. The second thing is we're not arguing impact. We're arguing specifically that Citigroup specifically interfered on an ongoing basis by having actual telephone conversations with prospective employers as required by FINRA. Thank you very much. Thank you very much, judges. Thank you both. In this case, as in the preceding cases, we will reserve decision. As I indicated earlier, Calizare versus Mortgage Electronic Registration and United States versus Berks are on submission, so I will ask the clerk please to adjourn court. I'll stand adjourned.